[File No. 6092.]

JACK KREIFELS, Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Foreign Corporation, Appellant.

(244 N. W. 880.)

Opinion filed October 22, 1932.

*Nestos, Herigstad, & Stenersen,* for appellant.

*L. J. Palda, Jr., C. E. Brace,* and *Robert W. Palda,* for respondent.

BURR, J. The plaintiff, claiming to be insured by the defendant against injuries to an automobile by reason of collision, brought suit upon his policy to recover the sum of $920 for damages to the car, loss

of time etc. The defendant answered alleging that the policy upon which the plaintiff sued never had been in force. ·

Each side made a motion for a directed verdict. The trial court made findings of fact and ordered judgment for plaintiff in the sum of $667 and costs. Judgment was entered accordingly and the defendant appeals.

There are sixteen specifications of error; but appellant says that upon the evidence introduced the plaintiff is not entitled to judgment under the terms of the policy upon which he sued, and a favorable decision of this question settles the case.

April 13, 1931, the plaintiff made application for insurance of a Chrysler car against collision and for insurance against liability and property damage, upon an application blank furnished by the defendant. The application contained this provision:

"It is understood and agreed that the membership fee and premium deposit is to be paid at the time this application is signed, by a check made payable to the company, and that liability on the part of the company is subject to all provisions of the policy as to payment of membership fee and premium deposit, and that default in payment of such check, when due and presented for payment, shall immediately and automatically void the policy issued hereon without notice of any kind to undersigned."

A membership fee for the right to secure insurance and for the benefits as a member of the company is required, but it is no part of the premium for the insurance; and a separate membership fee is required for each class of insurance. An applicant is required to make a premium deposit for each class of insurance desired to guarantee the payment of his share of the losses—balance to be repaid to him. In order to secure insurance on his car against collision the plaintiff was required to pay a membership fee of $5, and a premium deposit of $7; to have insurance on "liability and property damage" he paid an additional membership fee of $5 and an additional premium deposit of $12. On the date the application was received the policy of insurance against collision and for "liability and property damage" was issued to the plaintiff for a period of six months and "for such terms of six months or thereafter as the premium deposit is restored as required by this policy, and the application therefor." The lia-

bility of the company for insurance against collision is expressly made "subject to the terms and conditions forming a part of this policy."

Among the terms and conditions of the policy is the following, viz.: that "this entire policy shall automatically and immediately be void without notice of cancellation or notice of any other kind; (1) if there shall be default of any kind, or for any reason whatsoever, in payment of the check given for the membership fee or premium deposit when the same is due and presented for payment."

The membership fee is never returned to the policy holder, and has nothing to do with the premium, but gives him a right to obtain insurance, and for every class of insurance he is required to take out an additional membership.

The company is a mutual insurance company. Each member is required to "pay his share of the losses and expenses as billed by the company, to restore his premium deposit for the purpose of renewal," and when the losses are deducted from the deposit the member is notified as to the amount necessary to keep up the premium deposit to the amount required. In other words the applicant "must restore the premium deposit, so as to have the full amount of the premium for the purpose of renewal for the next six month period."

It appears that some time prior to this application the plaintiff was a member of the company and had insurance upon a car, making a premium deposit of $10. He obtained a second policy and was required to make an additional premium deposit of $12; and thus had paid $22 as premium deposits. His share of the losses and expenses thereunder was $8.51, and before the application for this policy he was in default in this sum of $8.51. He then sought another policy, took out additional memberships and the premium deposits under this new policy amounted to $19. Therefore the applicant was required to pay in all, including his delinquency, the sum of $27.51. The plaintiff desired that the premium deposits of $22 already paid be applied on his debt which would leave him a credit of $13.49, and he would pay to the company $5.51 in addition. It is clear therefore that he owed the company $19 on the new policy and if they credited him with the $13.49 on this new premium deposit he could pay for his new insurance by getting a credit because of this balance, and paying

$5.51 in addition. Until this credit was applied and the $5.51 paid there would be no adequate premium deposit on this new policy.

The plaintiff understood this and drew his check for $5.51 to cover the benefits under this new policy. Upon receipt of the check the policy was issued, subject to the conditions hereinbefore stated. The check was dated April 13, 1931, and was turned over to the accounting department of the defendant company on April 26, 1931, at Bloomington, Ill. In due course of business it was transmitted to the bank upon which it was drawn, but this bank refused to cash the check, returning it as "unpaid for want of funds"—the check being returned to the defendant company on or before May 6, 1931. Thereupon the defendant, on May 13, 1931, wrote to the plaintiff returning the check, and calling his attention to the fact that it had been returned to them unpaid with the notation "insufficient funds" and that therefore the contract of insurance "has automatically lapsed on date of expiration."

These facts are undisputed. Plaintiff says he did not receive the letter nor the check; but he does admit that from time to time he received from his bank the checks cashed and he did not find this check among such checks, neither does he claim that the bank cashed the check for the defendant.

It is the claim of the plaintiff that he never received any notice of cancellation of his policy; but under the terms of his application which he himself signed, any policy issued upon said application became "immediately and automatically void . . . without notice of any kind" if his check was not paid when presented for payment. The plaintiff is a traveling man and therefore we assume he is more or less familiar with business methods. For years he had been engaged in selling Underwood typewriters and accessories. He makes no claim that he was ignorant of business dealings and transactions. He knew that he was not entitled to any notice of cancellation of his policy. The letter written to the plaintiff notifying him that the check was not paid and that the policy was cancelled was mailed to the plaintiff by United States mail and a carbon copy thereof was duly received as evidence in this case. From the evidence therefore it is apparent the check was returned to the plaintiff and he was notified of the cancellation of his policy even though he says he did not receive the letter.

The defendant testified that during the month of April he had suf-

ficient funds in the bank to pay the check had it been presented during that time, though he had no knowledge or idea as to how much money he had in the bank. This however is immaterial. The policy was not dependent upon there being sufficient money in the bank to pay, but upon payment of the check when presented.

So far as these parties were concerned this check was presented within due time. There is nothing to indicate the bank was insolvent and it was the duty of plaintiff to have money on hand to pay his check. If he did, and the bank refused to pay it, this was a controversy between him and his bank. No finding was made by the trial court on whether the check was presented within a reasonable time, nor is the issue raised by the pleadings.

It is said the company was in possession of part of the premium, that the check for $5.51 represented but a small portion of the necessary premium, that the insurance company did not return the portion of the premium in its possession nor offer to return it, therefore it cannot be heard now to say there was no insurance in effect.

This claim of estoppel is not raised by the pleadings, though urged by respondent. But concededly a person could be a member of a company and yet have no insurance and also the company could owe him the return of a portion of a previously paid premium deposit. The membership fee has no bearing upon the insurance premium. Under previous policies the defendant had made premium deposits and after deducting his share of the losses there was to his credit with the defendant company the sum of $13.49. This sum was not a premium deposit on this policy. It was the portion returnable from other and prior insurance policy deposits. He had a right to ask the company to apply this debt due him, upon this insurance policy, and the company was willing to do so. No application of this credit was made. No application could be made until the full amount of the premium was paid. It is not a case of the company receiving a portion of the premium deposit for the policy issued and refusing to return it.

Respondent says that under the provisions of §§ 6532 and 6533 he was entitled to a return of these previous deposits, and he was. Section 6532 says "a person insured is entitled to return of the premium . . . when by any default of the insured other than actual fraud, the insurer never incurred any liability under the policy." But this in-

debtedness due him from the company was not a premium deposit upon this policy unless so applied. A member in the company may, after the amount of his losses is ascertained, leave any balance with the company for future appropriation, or he may have it returned to him. Hence the plaintiff could ask the company to apply it upon this insurance policy. He did do so, and the company was willing to credit him with it, if the insured would pay whatever extra was required. He did not do this so the company could not or did not make the application.

Section 6533 of the Compiled Laws does not help the plaintiff. This section says: "If a peril insured against has existed and the insurer has been liable for any period, however short, the insured is not entitled to a return of premiums so far as that particular risk is concerned, unless the insurance was for a definite period of time, in which case he is entitled to a proportionate return under sections 6517 and 6530." Section 6517 refers to a surrender of an insurance policy for cancellation and § 6530 refers to a return of premium when there is insurance for a definite period and the policy is surrendered by the insured before the expiration of the term.

This policy was issued April 13, 1931, and was for the period of six months, or until October 13, 1931. Even if he were entitled to insurance for the proportionate time the amount due him from the company would not insure this car for a period past the end of August, and this collision occurred September 27, 1931.

We are of the opinion that upon the undisputed facts in this case the plaintiff was not insured in this company at the time of the alleged loss. The judgment therefore is reversed and judgment ordered for the defendant dismissing the action.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.